IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

*******

| | |
|---|---|
| M.K. WEEDEN CONSTRUCTION, INC., | CV 13-49-H-CCL |
| Plaintiff, | OPINION & ORDER |
| -v- | |
| STATE OF MONTANA, MONTANA DEPARTMENT OF TRANSPORTATION COMMISSION, and its commissioners KEVIN HOWLETT, RICK GRIFFITH, JOHN COBB, CAROL LAMBERT, and BARB SKELTON, MONTANA DEPARTMENT OF TRANSPORTATION, MIKE TOOLEY, in his capacity as Director of the Montana Department of Transportation, and JOHN DOES 1-5, | |
| Defendants. | |

*******

Before the Court is an Application for Temporary Restraining Order and

Preliminary Injunction (ECF No. 1) filed by Plaintiff M.K. Weeden Construction, Inc. ("Weeden") on August 15, 2013. Also before the Court is a Motion to Intervene (ECF No. 7) filed by M. A. DeAtley Construction, Inc. ("DeAtley"), which motion is opposed by Plaintiff Weeden.

Background

On June 27, 2013, the Montana Department of Transportation ("MDT") advertised for bids on the Arrow Creek Slide Project (the "Project"). The Project will utilize federal funding to correct two large slides that are causing damage to Montana Highway 80 (about 20 miles north of Stanford, Montana) and posing a risk of harm to motorists on the highway. (ECF No. 15, Aff. of Kloberdanz, ¶ 7.) The two slides are currently moving at the rate of 1 to 2 inches per month, and, if the Project is not undertaken soon, these ongoing changes to the highway may require a redesign of the Project at significant cost to MDT. (ECF No. 15 ¶¶ 5, 9.) MDT desires to undertake this Project this Fall while weather is still favorable. Delay of this project through winter and spring of 2014 will increasingly diminish highway safety and may ultimately disrupt the highway for use by the public.

This federal-aid highway project is estimated to cost approximately $14 to $15 million. Because federal funding is being utilized for the Project, the requirements of the United States Department of Transportation ("USDOT") apply. The USDOT's Disadvantaged Business Enterprise Program ("DBE"), recently reauthorized by the Moving Ahead for Progress in the 21st Century Act, Public Law 112-141 ("MAP-21"), is one of the federal requirements applicable to the use of federal highway funds. The DBE Program requires states receiving federal highway funding to set goals for the use of disadvantaged business enterprises as participants in federal highway projects. MDT established an overall goal of 5.83% DBE participation in Montana's highway construction projects. (ECF No. 13, Aff. of McCubbins, ¶ 10.) That goal was approved by the United States Department of Transportation in April 2011. (ECF No. 13, ¶ 11.) In order to meet its overall goal, MDT establishes DBE subcontractor goals for federal-aid projects. On the Arrow Creek Slide Project, MDT established a DBE goal of 2%.

Thus, in submitting a bid on the Arrow Creek Slide Project, a bidder must

demonstrate that 2% of the contract amount will be performed by one or more DBE subcontractors. Plaintiff Weeden was the low bidder with a bid of $14,770,163.01. (ECF No. 2, ¶ 13.) However, Weeden's bid did not meet the 2% DBE requirement. Weeden concedes that its bid relied upon only 1.87% DBE subcontractors. (ECF No. 2, ¶ 14.) MDT notes that Weeden's bid actually identified only 0.81% DBE subcontractors. (ECF No. 12, ¶ 15.)[1]

Both USDOT and MDT allow a good faith exception to the DBE requirement for bidders that show they have attempted in good faith to meet the goal but could not do so. (ECF No. 13, ¶ 16.) The federal government has provided guidance as to what is a good faith effort. *See* 49 C.F.R. Part 26, Appendix A. MDT has also provided detailed guidance to contractors regarding what is a good faith effort to meet the DBE goal. (ECF No. 13, Exhibit A, pp. 9-11.)

---

[1] Apparently, when Weeden undertook to document its good faith effort to meet the 2% DBE goal, it discovered that one of its subcontractors was actually a DBE. (ECF 13, p. 15, ¶ 6.) However, even taking this new information into account, Weeden's bid failed to meet the 2% DBE goal.

Weeden was the only bidder who did not meet the 2% DBE goal. The other five bidders not only met, but also exceeded the goal, significantly, with bids ranging from 2.19% DBE participation to 6.98% DBE participation. (ECF No. 13, Affidavit of McCubbins, ¶ 20.)

Weeden attempted to utilize the good faith exception to the DBE requirement. MDT's DBE Participation Review Committee considered Weeden's good faith documentation on July 30, 2013, and found that Weeden's bid was non-compliant as to the DBE requirement and failed to demonstrate good faith effort to solicit DBE subcontractor participation in the contract. (ECF No. 13, Aff. McCubbins, Exhibit B, p. 12.) Weeden appealed that decision to the MDT DBE Review Board and appeared before the board at a hearing on August 12 and 15, 2013. The DBE Review Board affirmed the committee decision finding that Weeden's bid was not in compliance with the contract DBE goal and finding that Weeden had failed to make a good faith effort to comply with that goal. (ECF No. 13, Exhibit C, p. 13.) Specifically, the DBE Review Board found that Weeden had received a DBE bid for traffic control, but Weeden decided to perform that work

itself in order to lower its bid amount. (ECF No. 13, p. 13, ¶ 2.) Additionally, the DBE Review Board found that Weeden's mass emailing to 158 DBE subcontractors without any follow up was a *pro forma* effort not credited by the Review Board (or by federal guidance) as an active and aggressive effort to obtain DBE participation. (ECF No. 13, p. 14, ¶ 4.)

Proposed Intervenor DeAtley contends that it submitted the lowest responsive bid of $ 15,552,004.46. (ECF No. 7-2, Affidavit of Scott Palmer, ¶ 12.) DeAtley's bid exceeded the 2% DBE goal. DeAtley claims that its DBE utilization was approximately 3.3%. (ECF No. 7-3, Exhibit A, Aff. of Palmer.)

The Application for Temporary
Restraining Order/Preliminary Injunction

Plaintiff Weeden now seeks an injunction against Defendant MDT to prevent MDT from letting the contract to another bidder (presumably, but not necessarily, to Intervenor DeAtley Construction). Plaintiff Weeden claims in Count 1 of its Complaint that MDT's DBE program violates the Equal Protection Clause of the U.S. Constitution and the Montana Constitution. Plaintiff asserts

that there is no supporting evidence of discrimination in the Montana highway construction industry, and therefore there is no government interest that would justify favoring DBE entities. Plaintiff Weeden claims in Count 2 of its Complaint that its right to Due Process under the U.S. Constitution and the Montana Constitution has been violated. Specifically, Plaintiff Weeden claims that MDT did not provide reasonable notice of the good faith effort requirements. Weeden also complains that it was not given notice of DeAtley's July 30, 2013, letter to MDT that challenged the responsiveness of Weeden's bid based on MDT's 2% DBE requirement. Plaintiff Weeden concludes that it has a constitutionally protected property interest in an award of the contract for the Arrow Creek Slide Project.

Legal Standard for Injunction

As the parties agree, the legal standard for issuance of an injunction is whether (1) the applicant is likely to succeed on the merits of its claims, (2) it is likely to suffer irreparable harm absent preliminary relief, (3) the balance of the equities tips in its favor, and (4) an injunction is in the public interest. *Winter v.*

*Nat'l Res. Def. Council*, 555 U.S. 7, 129 S. Ct. 365, 374 (2008). The Ninth Circuit has allowed an alternative "sliding scale" test such that "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal marks removed). However, 'serious questions on the merits' requires more than a simple preponderance of the evidence; plaintiff must demonstrate a "substantial case for relief on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011).

Discussion

The criteria for injunctive relief favor Defendants. First, it is not a certainty that Plaintiff Weeden will suffer irreparable harm absent preliminary relief. In the past four years, Weeden has obtained six state highway construction contracts valued at approximately $26 million. Undoubtedly, Weeden has invested in equipment and in its workforce, neither of which can remain idle for an extended

period of time. However, MDT has $50 million more in highway construction projects to be let during the remainder of 2013 alone. (ECF No. 14, Aff. of Christensen, ¶ 6.) As demonstrated by its past performance, Weeden has the capacity to obtain other highway construction contracts that might allow it to put its employees and equipment to work. Thus, there could be little no risk of irreparable injury to Plaintiff Weeden in the event that MDT awards the Arrow Creek Slide Project contract to another bidder.

Second, the balance of the equities does not tip in Plaintiff Weeden's favor. Although Weeden asserts that MDT and USDOT's rules regarding good faith efforts to obtain DBE subcontractor participation are "confusing, non-specific, and contradictory", ECF No. 3 Compl. ¶ 70, it is obvious that the other <u>five</u> bidders were able to meet and exceed the 2% DBE requirement without any difficulty whatsoever. (ECF No. 13, Aff. of McCubbins, ¶ 20.) On its face, Weeden's bid is not responsive to MDT's requirements and therefore is not and cannot be the lowest responsible bid. The balance of the equities do not tilt in favor of the one bidder who did not meet the requirements of the contract, especially when

numerous other bidders ably demonstrated an ability to meet those requirements.

Not only do the equities not tip sharply in Weeden's favor, it is questionable whether Weeden raises serious questions on the merits of its equal protection claim. In fact, because Weeden is a prime contractor and not a subcontractor, it is clear that Weeden lacks Article III standing to assert its equal protection claim. To show standing, Weeden must show (1) an "injury in fact" that is concrete and particularized and actual or imminent, (2) an injury that is traceable to the challenged action, and (3) an injury that is redressable by a favorable decision. *Bernhardt v. Cnty. of L.A.*, 279 F.3d 862, 868-69 (9th Cir. 2002) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)). As the Supreme Court defined "injury in fact" in another equal protection case, *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville, Florida*, 508 U.S. 656, 658-59, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993), it is "the inability to compete on equal footing in the bidding process, not the loss of a contract" that defines the injury in fact. *Id.* at 666. A prime contractor such as Weeden is not permitted to

challenge MDT's DBE program as if it were a non-DBE subcontractor because Weeden cannot show that *it* was subjected to a racial or gender-based barrier (that it could not possibly meet) in its competition for the prime contract. In this case, Plaintiff Weeden was not deprived of the ability to compete on equal footing with the other bidders, so Weeden suffered no equal protection injury and lacks standing to assert an equal protection claim as if it were a non-DBE subcontractor.

Even if Weeden were a non-DBE subcontractor and therefore had Article III standing to present an equal protection claim, MDT presents significant evidence of underutilization of disadvantaged businesses generally, evidence that supports a narrowly tailored race and gender preference program. Although Weeden points out that some business categories in Montana's highway construction industry do not have a history of discrimination (namely, the category of construction businesses in contrast to the category of professional businesses), the Ninth Circuit has recently rejected a similar argument requiring evidence of discrimination in every single segment of the highway construction industry before a preference program can be implemented. *See Associated General Contractors v. California*

*Dept. of Transportation*, 713 F.3d 1187 (9th Cir. 2013) (holding that Caltrans' DBE program survived strict scrutiny, was narrowly tailored, did not violate equal protection, and was supported by substantial statistical and anecdotal evidence of discrimination). Particularly relevant here, the Ninth Circuit held that California's DBE program need not isolate construction from engineering contracts or prime from subcontracts to determine whether the evidence in each and every category gives rise to an inference of discrimination. *Id.* at 1197. Instead, California--and, by extension, Montana--is entitled to look at the evidence "in its entirety" to determine whether there are "substantial disparities in utilization of minority firms" practiced by some *elements* of the construction industry. *Id.* "It is enough that the anecdotal evidence supports Caltrans' statistical data showing a pervasive pattern of discrimination." *Id.* Indeed, there is no allegation here that MDT has exceeded any federal requirement or done other than comply with USDOT regulations. Given the similarities between Weeden's claim and AGC's equal protection claim against Caltrans, it does not appear likely that Weeden will succeed on the merits of its equal protection claim.

Additionally, Plaintiff Weeden's Due Process claim is weakened considerably by its failure to present any argument in its Brief in Support of injunctive relief. The Court rejects Weeden's bald assertion that it has a protected property right in a contract that has not been awarded to it where the government agency retains discretion to determine the responsiveness of the bid. To establish a property interest, a party must establish a "legitimate claim of entitlement." *Board of Regents v. Roth*, 408 U.S. 564, 569-70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). That entitlement is established "by reference to state law." *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976).

In Montana, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Akhtar v. Van de Wetering*, 642 P.2d 149, 153 (Mont. 1982) (finding no property interest for due process purposes in the award of tenure due to discretionary nature of tenure decision). When a public official possesses discretion to award or withhold the contract, Montana law does not recognize a

legitimate claim of entitlement to the contract in a disappointed bidder. *ISC Distributors, Inc. v. Trevor*, 903 P.2d 170 (Mont. 1995).

Montana law requires that an award of a public contract for construction, repair or public works must be made to the lowest *responsible* bidder. Mont. Code Ann. § 18-1-102(1)(a). "Lowest responsible bidder' does not merely mean the lowest bidder whose pecuniary ability to perform the contract is deemed the best, but the bidder who is 'most likely in regard to skill, ability and integrity to do faithful, conscientious work, and promptly fulfill the contract according to its letter and spirit.'" *Debcon, Inc. v. City of Glasgow*, 28 P.3d 478, 484 (Mont. 2001) (quoting *Koich v. Cvar*, 110 P.2d 964, 965 (Mont. 1941)). This statute confers upon the government agency broad discretion in the award of a public works contract, and an award of such contract cannot be set aside absent evidence of bad faith, fraud, or corruption. *Koich*, 110 P.2d at 967. Thus, a low bidder such as Weeden acquires no vested property right in a contract until the contract has been awarded, which obviously has not yet occurred.

Furthermore, and despite the fact that Plaintiff does not have a vested

interest in the award of the contract, the Court notes that Weeden was granted notice, hearing, and appeal from MDT's decision denying the good faith exception to the DBE contract requirement. Given this circumstance, it does not appear likely that Weeden will succeed on its due process claim.

Finally, the public interest clearly favors immediate correction of the two slides threatening to disrupt public travel on Montana Highway 80 near Stanford. Not only is the convenience of the traveling public being threatened by the current road condition, but the safety of the public is threatened as well. Potential damage to Weeden can be remedied by money damages and is outweighed by the need for public safety.

Conclusion

The Court concludes that Plaintiff Weeden is not entitled to injunctive relief. Weeden has failed to show that it is likely to succeed on the merits of its claims (or even that there are serious questions going to the merits) or that the balance of the equities tips in its favor. Moreover, importantly, the evidence clearly shows that an injunction against MDT would not be in the public interest.

Other issues and defenses may be raised. This Order addresses only the issue of extraordinary relief and allows for further pleading, briefing and other appropriate proceedings.

Accordingly,

IT IS HEREBY ORDERED that the Motion to Intervene (ECF No. 7) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Application for Temporary Restraining Order and Preliminary Injunction (ECF No. 1) is DENIED.

Done and Dated this 4th day of September, 2013.

_____
CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE